IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

04 SEP 29 PM 3: 44

U.S. ... COURT
N.D. OF ALABAMA

TRIONA ANN CARTER,       ]
                         ]
    Petitioner,          ]
                         ]
vs.                      ]    CIVIL ACTION NO. 03-AR-2438-S
                         ]
WARDEN GLADYS DEESE and  ]
THE ATTORNEY GENERAL FOR ]
THE STATE OF ALABAMA,    ]       ENTERED
                         ]
    Respondents.         ]       SEP 29 2004

## MEMORANDUM OPINION

This is a petition for a writ of habeas corpus brought by a person in custody under a judgment of a court of the State of Alabama. 28 U.S.C. § 2254. The petitioner, Triona Ann Carter, was convicted on November 4, 1998, in the Circuit Court of Jefferson County, of intentional murder in the death of Artimese Johnson and of manslaughter in the death of Marcus Cephas. She was sentenced to life imprisonment for the intentional murder and twenty years in prison for the manslaughter.

On appeal, Carter claimed that the trial court erred in denying her requested jury instructions on self-defense and that the trial court erred in denying her motion for new trial based on alleged inconsistent verdicts by the jury. On June 30, 2000, the Alabama Court of Criminal Appeals reversed Carter's convictions and remanded the cases for new trials. The court held that the trial court committed error by not giving Carter's requested jury instructions on self-defense. *Carter v. State*, 843 So. 2d 798 (Ala. Crim. App. 2000).



On May 24, 2001, the Alabama Supreme Court reversed the judgment of the Alabama Court of Criminal Appeals, finding that the trial court properly denied Carter's request for jury instructions on self-defense under the facts of her case. *Carter v. State*, 843 So. 2d 804 (Ala. 2001). The case was remanded to the lower appellate court for further order or proceedings.

On August 31, 2001, on remand, the Alabama Court of Criminal Appeals again reversed Carter's convictions, finding that the verdicts were inconsistent because they indicated a finding of different criminally culpable mental states arising from the same actions. *Carter v. State*, 843 So. 2d 807 (Ala. Crim. App. 2001).

On May 7, 2002, the Alabama Supreme Court again reversed the decision of the lower appellate court. *Carter v. State*, 843 So. 2d 812 (Ala. 2002). After remand from the Alabama Supreme Court, the Alabama Court of Criminal Appeals affirmed Carter's convictions on August 30, 2002. *Carter v. State*, 843 So. 2d 820 (Ala. Crim. App. 2002). The Alabama Court of Criminal Appeals issued a certificate of judgment on September 17, 2002.

Carter has now filed a petition for a writ of habeas corpus in this court. In support of her petition, Carter alleges that the verdicts are inconsistent. In response to the court's order to show cause, the respondents have filed an answer in which they assert that the petition is due to be dismissed because Carter's claim is without merit. The parties were advised that the respondents' answer would be treated as a motion for summary dismissal pursuant to Rule 8(a) of the Rules Governing Section 2254 Cases. In response, Carter has filed a traverse.

Because Carter filed this petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), amending § 2254, these claims must be evaluated according to the standards as amended by the Act. *Lindh v. Murphy*, 117 S. Ct. 2059, 2063 (1997). Amended § 2254(d) states:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Thus, the petitioner can obtain relief only if she can establish that the Alabama Supreme Court's adjudication of the claims "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)and (2). *See Neelley v. Nagle*, 138 F.3d 917 (11th Cir. 1998), *cert. denied*, 119 S. Ct. 811 (1999); *Schlager v. Washington*, 113 F.3d 763, 768 (7th Cir. 1997); *Hodges v. Hawes*, 955 F. Supp. 958, 964 (N.D. Ill. 1997).

Carter claims that she was wrongly convicted of the intentional murder of one individual and the provocation manslaughter of another, arising from the same conduct. She points out that she was convicted of the provocation manslaughter of Marcus Cephas, who was with a group of individuals who became engaged in an altercation with Carter, Johnson,

and Carter's boyfriend, but convicted of the intentional murder of her friend, Artimese Johnson.

The Alabama Supreme Court quoted the Alabama Court of Criminal Appeals' summary of the relevant facts in this case:

> Of particular relevance here is that Carter, her boyfriend, Trevas Bell, and her good friend, Artimese Johnson, were involved in an altercation with a group composed of Tamiko Smith, Sheri Baker, and Marcus Cephas. Cephas attempted to push Carter, and Bell began fighting with Cephas. As the two men tussled on the ground, Carter hit Cephas, and Cephas knocked Carter to the ground. Carter saw a 9mm pistol on the ground near her, and she picked it up and began firing. . . . Carter shot and killed Cephas and her friend, Artimese Johnson. She also shot and wounded her boyfriend, Bell.

*Carter v. State*, 843 So. 2d 812, 813 (Ala. 2002). The Alabama Supreme Court found as follows:

> If the verdicts did indeed reflect that Carter possessed two distinct mental states regarding the killing of Cephas and Johnson, then the Court of Criminal Appeals would be correct in determining that the verdicts are inconsistent and that that fact requires reversal. However, the State contends, and we must agree, that the Court of Criminal Appeals has misunderstood that a conviction for provocation manslaughter implies a less culpable state of mind by the perpetrator than a conviction for intentional murder.
> Section 13A-6-3(a)(2), Ala.Code 1975, provides that a person commits provocation manslaughter if he
>> causes the death of another person under circumstances that would constitute murder under Section 13A-6-2 [intentional murder]; except, that he causes the death due to a sudden heat of passion caused by provocation recognized by law, and before a reasonable time for the passion to cool and for reason to assert itself.
>
> (Emphasis added.) Thus, when the jury finds a person guilty of provocation manslaughter, the person is deemed guilty of intentional murder ("under circumstances that would constitute murder under § 13A-6-2"), but the conviction is reduced to manslaughter because a legally recognized mitigating circumstance (provocation) has been found to exist. [FN1]
>> FN1. Section 13A-6-2(b) does not contradict this principle. It states:

4

> A person does not commit murder under subdivisions (a)(1) or (a)(2) of this section if he was moved to act by a sudden heat of passion caused by provocation recognized by law, and before there had been a reasonable time for the passion to cool and for reason to assert itself.

This provision is merely the mirror image of § 13A-6-3(a)(2), explaining that a "heat-of-passion" killing will not be considered murder. It does not, of course, mean that the existence of legal provocation negates any intent on the part of the defendant.

The Commentary to § 13A-6-3(a)(2) explains that "the law, recognizing the frailties of man and his loss of reason and control in certain provocative situations overlooks or forgives the 'malice' and mitigates the homicide from murder to a lesser grade." (Emphasis added.) The "malice," or intent, is not negated, but merely forgiven because of the circumstances. As the Court of Criminal Appeals has itself observed in the past: "Heat-of-passion provocation implies that [the defendant's] actions were intentional but that, because of the circumstances, they were excused by law." *McGriff v. State*, [Ms. CR-97-0179, September 29, 2000] ___ So.2d ___, ___ (Ala.Crim.App. 2000). In fact, as the Wisconsin Supreme Court has succinctly stated: "[M]any such homicides [i.e., those resulting from heat-of-passion provocation] do involve an actual intent to take the life of another. This very intent is typically the result of the heat of passion." *State v. Lee*, 108 Wis.2d 1, 9, 321 N.W.2d 108, 112 (1982). In sum, provocation does not negate intent. [FN2]

> FN2. Provocation addresses motive rather than intent. For public policy reasons, some motives for killing are deemed criminally less culpable than other motives. Provocation manslaughter is one of those, probably because the people sympathize with, but do not condone, the response. In contrast, self-defense is condoned because it is a complete defense to a killing. Motive, while sometimes confused with intent, is not one of the legal elements of the crime of murder.

Thus, the jury did not find two distinct mental states for one course of conduct: they found that Carter had the intent to kill, but that in the case of Cephas, her guilt was mitigated by the provocation brought on by his actions toward her. The intent that "transferred" was not lessened by this provocation; only Carter's guilt in the eyes of the law was lessened because of the factual circumstances. Because this is not a case where the verdicts are "mutually exclusive of each other," *Grikis*, 552 So.2d at 187, a reversal is not warranted.

It is worth noting that the Commentary to § 13A-6-2 strongly discourages any use of the doctrine of transferred intent:

5

> Under the Criminal Code, there is no need for the anachronistic rule of "transferred intent"....
>
> The concept may serve a useful purpose in the tort field but has no proper place in criminal law. [Transferred intent] is obviously only a fiction, or a legal conclusion, to accomplish the desired result of liability.... [I]n the field of crime this concept has the vice of being a misleading half-truth, often given as an improper reason for a correct result....
>
> Where the actor intentionally or knowingly does an act that is highly likely to cause death to another person, and as a natural and direct result another person is killed, though not the person subjectively intended to be killed . . ., the actor is guilty of murder . . . because he intended "to cause the death of another person . . . ."

The jury verdicts in this case yield precisely this result: the jury found that Carter had acted intentionally to kill one person and did kill that person, so she was found guilty of intentional murder for the death of Artimese Johnson. No provocation existed to lessen the guilt as to that murder, unlike Cephas's death. The intentional murder remained just that--intentional--for the killing of Johnson. Who Carter intended to kill made no difference concerning her culpability for the crime. Thus, even if Carter's intent in killing Cephas did not "transfer" to the killing of Johnson, it remained the same for a single course of conduct in which two people were killed, and we would have to say that the jury did not render inconsistent verdicts based on Carter's intent.

Thus, the Court of Criminal Appeals overstates the law when it states, as it did in this case and as it has before, that "[n]ot only is intent transferred, but also the degree of the crime and any defenses that would be valid if the intended victim had been hit," *Mathis v. State*, 497 So.2d 231, 232 (Ala.Crim.App. 1986), quoting Prosser, Transferred Intent, 45 Tex. L. Rev. 650, 653 (1967). There was no transfer of degree of guilt in this case because separate findings on the factual circumstances warranted separate degrees of guilt, which was borne out by the separate verdicts returned by the jury. [FN3]

> FN3. Saying that the provocation defense in this case transfers along with the intent has the effect of changing the facts of the case, because Johnson did not provoke Carter, and while transferred intent may be a legal fiction designed to reach just results, the fiction should not be so extended in any given factual situation that it defies common sense.

Even if the jury did not use this rationale to arrive at its result, the fact remains that the verdicts were not inconsistent; therefore a reversal was not warranted. Because we find that there existed no fundamental inconsistency in the verdicts, there is no need to reach the State's alternative argument that

6

the Court of Criminal Appeals should have reversed only one of the verdicts, rather than both.

For the foregoing reasons, the Court of Criminal Appeals erred in reversing Carter's convictions. Accordingly, we reverse its judgment and we remand the case for an order or proceedings consistent with this opinion.

*Id.* at 814-16

The petitioner has not established that the Alabama Supreme Court's adjudication of this claim resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, or that the decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. Thus, the petition is due to be DISMISSED.

An appropriate order will be entered.

DONE this 29th day of September, 2004.

_____
WILLIAM M. ACKER, JR.
SENIOR UNITED STATES DISTRICT JUDGE